# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Robert Green, ex rel United States of America pursuant to the Federal False Claims Act, 31 U.S.C. 3729 et seq. <br><br> vs. <br><br> Schuykill Products, Inc.; Joseph W. Nagle, of Deerfield Beach, Florida; Ernest G. Fink, Jr., of Orwigsburg, Pennsylvania; CDS Engineers; Marikina Construction Company | Docket No.1:10-CV-10-00040-JEJ <br><br> First Amended Qui Tam Complaint Pursuant to 31 U.S.C. Title 3729 and 3730 |

Plaintiff/Relator hereby files this First Amended[1] Qui Tam Complaint pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq* in that it is a civil action arising under the laws of the United States.

## I. Introduction

1.      Robert Green ( "Green" or "Relator") files this Qui Tam Complaint on behalf of the United States of America against defendants Schuykill Products, Inc.; Joseph W. Nagle, of Deerfield Beach, Florida; Ernest G. Fink, Jr., of Orwigsburg, Pennsylvania; CDS Engineers; Marikina Construction Company for treble damages and civil penalties arising from the defendants' false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* Relator brings this action based on his direct, independent, and personal knowledge.

---

[1] The Original Complaint was filed Under Seal on January 8, 2010. The Complaint was unsealed by the Court on November 21, 2011, filed November 22, 2011

2.   As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), Relator has provided to the United States by and through the Federal Bureau of Investigation (FBI), Department of Transportation (DOT), Office of Inspector General of the DOT (OIG-DOT) (collectively "United States Government") and others, evidence and statements, both orally and through documents and other physical evidence, of all material evidence and information related to the Complaint herein. These disclosures, supported by material evidence, were known to Relator at their filing establishing the existence of defendants' false claims. Relator was the original source of such information to the United States Government.

## II. The Parties

### A. Relator

3.   Relator Robert Green ("Relator") resides at 157 Main Street, Locust Gap, Pa., 17840. During the relevant times hereunder, Relator was employed by Defendant Marikina and SPI commencing in or about April 2002 and worked for them through March 2005. Relators' knowledge of the acts and fraud described herein were direct and independent and were voluntarily provided to the United States who had no knowledge of the fraud prior to receiving Relator's disclosures and evidence.

### B. Defendants and Other Key Individuals

4.   Defendants are, as described below, Schuykill Products, Inc. (SPI); Joseph W. Nagle (Nagle), of Deerfield Beach, Florida; Ernest G. Fink, Jr. (Fink), of Orwigsburg, Pennsylvania; C.D.S. Engineers, Inc. (CDS); and Marikina Construction Company. The principal residence or place of business of the Defendants is as follows: CDS Engineers, Inc., 121 River St., Ste A, Cressona, PA 17929; Schuykill Products, Inc., 121 River St., Cressona, PA 17929-1133; Joseph Nagle, 1421 SE 14th Ct., Deerfield Beach, FL 33441-7329. SPI, Marikina and CDS are hereinafter referred to as the Corporate Defendants. Nagle and Fink are hereinafter referred to as the Individual Defendants.

Collectively, the Corporate Defendants and Individual Defendants are referred to "Defendants."

### C. The United States of America

5. The U.S. Department of Transportation's DBE (disadvantaged business enterprise) program provides a vehicle for increasing the participation by minority business enterprises in state and local procurement. DOT DBE regulations require state and local transportation agencies that receive DOT financial assistance to establish goals for the participation of DBEs. Each DOT-assisted State and local transportation agency is required to establish annual DBE goals, and review the scopes of anticipated large prime contracts throughout the year and establish contract-specific DBE subcontracting goals. In addition to establishing goals, state and local recipients also certify the eligibility of DBE firms to participate in DOT-assisted projects. Some groups are presumed to be socially and economically disadvantaged for the purposes of participation in this program. The main objectives of the DBE Program are to ensure that small disadvantaged business enterprises ( DBE) can compete fairly for federally funded transportation-related projects. There has been, since 1983, a statutory provision requiring DOT to ensure that at least 10% of the funds authorized for the highway and transit financial assistance programs be expended with DBEs (the "DBE Goal"). DOT has established a single DBE goal, encompassing both firms owned by women and minority group members. To be certified as a DBE, a firm must be a small business owned and controlled by socially and economically disadvantaged individuals.

## III. Jurisdiction and Venue

6. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

7. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the acts proscribed by 31 U.S.C. §§ 3729 *et seq*. And complained of herein took place in this district, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, defendants transact and have transacted business in this District.

## IV. Summary of Allegations

8. Commencing with his employment, in 2002 and continuously thereafter, Relator observed and disclosed to the FBI, beginning in 2004 and thereafter, that Schuykill Products, Inc. (SPI) was engaging in a series of transactions, contracts, agreements, and providing express false certifications in a fraudulent scheme in connection with a Disadvantaged Business Enterprise (DBE) to defraud the U.S. Department of Transportation (USDOT). Relator, thereafter, continued to provide disclosures of material evidence and assist the FBI and other Agencies of the Federal Government.

9. The schemes which were brought to the attention of the United States Government by Relator had run for over 15 years, and involved the improper award of hundreds of federally-funded highway and mass transit contracts in Pennsylvania and other states. In Pennsylvania alone over 300 contracts were improperly awarded that had a value at approximately $136 million.

10. Defendants Joseph W. Nagle, of Deerfield Beach, Florida (Nagle), and Ernest G. Fink, Jr., of Orwigsburg, Pennsylvania (Fink), co-owned and operated SPI and its wholly owned subsidiary CDS Engineers (CDS) until April 2009 when they sold the companies to Northeast Prestressed Products, LLC. Nagle and Fink were the

primary officers, directors and owners the SPI and CDS and were responsible for the actions described herein and were, in fact, the planners and originators the fraudulent actions.

11. SPI manufactured concrete products for the US on highway projects and CDS operated as its engineering and erection division. Both companies were based in Cresson, Pennsylvania. Nagle was the President and Chief Executive Officer of SPI and Fink was vice-president and Chief Operating Officer of SPI.

12. Nagle, Fink and others used a small Connecticut highway construction firm known as Marikina Construction Company (Marikina) as a "front company" to obtain federally funded government contract awards reserved for small and disadvantaged businesses in order to meet the DBE Goal by DOT regulations.

13. Marikina was owned by Romeo P. Cruz, of West Haven, Connecticut, a naturalized American citizen with origins from the Philippines. Marikina was designated a disadvantaged business by Pennsylvania Department of Transportation (PennDot) in 1993 which made it eligible to bid on and receive Pennsylvania highway construction contracts on Dot assisted programs reserved for DBE's.

14. Between 1993 and 2008, Marikina received hundreds of federally-funded contracts for highway and mass transit construction projects worth millions of dollars but did not perform the work. In Pennsylvania alone, over 300 federally-funded contracts that were worth approximately $136 million were awarded to Marikina, when the work was actually performed by SPI and CDS personnel.

15. The DOT DBE Program is enforced by State and local agencies receiving federal funds. Agencies such as Pennsylvania Department of Transportation (PennDOT) and Southeastern Pennsylvania Transportation Authority (SEPTA) received most of the federally funded contracts in Pennsylvania.

16. PennDOT and SEPTA require general contractors (Contractors) who have

submitted bids to work on federally funded projects to certify and to demonstrate that they can meet the DBE Goal. A summary of the projects and work that Defendants fraudulently obtained (hereinafter collectively referred to as "Marikina Contracts") and received funds that Plaintiff had direct and personal knowledge are as follows:

| No. | Project Number | General Contractor (GC) | Marikina DBE Subcontract Date | Federal Funding |
|---|---|---|---|---|
| 1 | 039196 | Susquehanna Valley Construction Corporation | 4/15/02 | $173,173.00 |
| 2 | 029028 | Glenn O. Hawbaker, Inc. | 6/25/02 | $650,100.00 |
| 3 | 037201 | New Enterprise Stone & Lime Co., Inc. | 6/18/02 | $1,037,854.10 |
| 4 | 094026 | Susquehanna Valley Construction Corporation | 4/29/02 | $206,428.00 |
| 5 | 034171 | Eastern Industries, Inc. | 6/25/02 | $319,603.00 |
| 6 | 031122 | Nestlerode Contracting Company, Inc. | 7/12/02 | $53,836.00 |
| 7 | 087269 | Allan A. Myers, LP | 7/31/02 | $785,500.00 |
| 8 | 082136 | Susquehanna Valley Construction Corporation | 10/14/02 | $237,492.00 |
| 9 | 031126 | Jay Fulkroad & Sons, Inc. | 10/10/02 | $268,279.43 |
| 10 | 051279 | Reading Site Contractors, Div. of Reading Materials | 1/8/03 | $2,490,036.84 |
| 11 | 036066 | HRI, Inc. | 1/27/03 | $58,379.00 |
| 12 | 039209 | Susquehanna Valley Construction Corporation | 1/13/03 | $600,907.00 |
| 13 | 031127 | Jay Fulkroad & Sons, Inc. | 2/14/03 | $54,403.95 |

Case 1:10-cv-00040-SHR Document 18 Filed 01/26/12 Page 7 of 15

| 14 | 026064 | Shingle decker's Welding, Inc. | 3/13/03 | $46,235.00 |
|---|---|---|---|---|
| 15 | 032268 | Glenn O. Hawbaker, Inc. | 2/14/03 | $259,229.00 |
| 16 | 032280 | Susquehanna Supply Co. | 2/3/03 | $216,181.00 |
| 17 | 045145 | Fahs-Rolston Paving Corporation | 3/11/03 | $257,518.00 |
| 18 | 053197 | Allan A. Myers, LP | 2/25/03 | $2,074,476.00 |
| 19 | 034185 | Jay Fulkroad & Sons, Inc. | 4/16/03 | $579,685.37 |
| 20 | 047092 | American Asphalt Paving Co. | 5/21/03 | $106,849.00 |
| 21 | 084386 | Kingsley Construction, Inc. | 4/25/03 | $2,006,556.99 |
| 22 | 081073 | Susquehanna Valley Construction Corporation | 6/2/03 | $97,556.00 |
| 23 | 055167 | D.E. Stoltzfus Construction Company (DESCCO) | 9/20/03 | $83,743.00 |
| 24 | 087266 | Dublin, Inc. | 9/18/03 | $102,958.00 |
| 25 | 045151 | American Asphalt Paving Co. | 10/21/03 | $25,000.00 |
| 26 | 20381 | Allan A. Myers, LP | 8/23/03 | $268,264.58 |
| 27 | 088145 | Susquehanna Valley Construction Corporation | 11/26/03 | $446,193.00 |
| 28 | 64361 | HRI, Inc. | 1/21/04 | $43,299.00 |
| 29 | 7520 | Wolyniec Construction, Inc. | 1/23/04 | $107,605.97 |
| 30 | 5617 | HRI, Inc. | 3/1/04 | $410,235.00 |
| 31 | 6263 | Nestlerode Contracting Company, Inc. | 2/5/04 | $115,517.00 |
| 32 | 5141 | Susquehanna Valley Construction Corporation | 1/20/04 | $198,610.00 |

| 33 | 4648 | Walsh Construction Company | 7/24/06 | $194,115.00 |
| 34 | 083056 | Hempt Bros., Inc. | 2/9/04 | $335,501.00 |
| 35 | 11710 | No. 1 Contracting Corporation | 12/19/03 | $146,570.00 |
| 36 | 085186 | J.D. Eckman, Inc. | 2/4/04 | $134,378.00 |
| 37 | 4200 | Susquehanna Valley Construction Corporation | 4/2/04 | $85,979.00 |
| 38 | 042345 | Minichi, Inc. | 3/2/04 | $174,000.00 |
| 39 | 5937 | Susquehanna Valley Construction Corporation | 3/8/04 | $278,457.00 |
| 40 | 16476 | Allan A. Myers, LP | 1/23/04 | $62,021.53 |
| 41 | 088084 | J.D. Eckman, Inc. | 5/10/04 | $175,512.00 |
| 42 | 6139 | Trumbull Corporation | 10/22/04 | $4,988,919.49 |
| 43 | 5554 | Susquehanna Supply Co., Inc. | 5/24/04 | $97,155.00 |
| 44 | 2900 | Wen-Brooke Contracting, Inc. | 6/18/04 | $95,016.00 |
| 45 | 25992 | Glenn O. Hawbaker, Inc. | 11/19/04 | $808,945.00 |
| 46 | 20990 | J.D. Eckman, Inc. | 7/19/04 | $63,161.00 |
| 47 | 11382 | J.D. Eckman, Inc. | 9/22/04 | $162,000.00 |
| 48 | 16742 | Road-Con, Inc. | 11/15/04 | $79,061.00 |
| 49 | 64275 | Nyleve/Morrissey A Joint Venture | 12/30/04 | $265,741.00 |
| 50 | 5095 | Fahs Construction Group | 11/16/04 | $1,042,021.53 |
| 51 | 6101 | Susquehanna Valley Construction Corporation | 12/13/04 | $626,753.00 |
| 52 | 4584 | Joseph B. Fay Co. | 12/30/05 | $623,471.00 |
| 53 | 68703 | Trumbull Corporation | 3/24/05 | $1,100,000.00 |
| 54 | 8900 | Minichi, Inc. | 2/11/05 | $143,361.00 |

| 55 | 6007 | Susquehanna Valley Construction Corporation | 2/21/05 | $283,895.00 |
| 56 | 4640 | Nestlerode Contracting Company, Inc. | 1/17/05 | $41,209.00 |
| 57 | 17023 | Loftus Construction, Inc. | 5/2/05 | $201,500.00 |
| 58 | 9584 | Susquehanna Valley Construction Corporation | 4/14/05 | $75,582.00 |
| 59 | 62658 | Glenn O. Hawbaker, Inc. | 1/18/05 | $223,502.70 |
| 60 | 10467 | Balfour Beatty Infrastructure, Inc. | 2/14/05 | $978,853.24 |
| 61 | 3140 | Glenn O. Hawbaker, Inc. | 2/11/02 | $2,968,370.01 |
| 62 | 32742 | Robert C. Young, Inc. | 2/8/05 | $91,381.00 |

17. Funds from the Marikina Contracts merely passed through Marikina to make it appear that a DBE was involved, when in reality, SPI and CDS personnel actually found, negotiated, coordinated, performed, managed and supervised all the contracts awarded to Marikina.

18. All the profits from the Marikina Contracts allegedly ended up with SPI and CDS. In exchange for allowing SPI and CDS to use its name, Marikina was paid a small fixed fee. Essentially, SPI and CDS, which were not DBE's, rented Marikina's name to obtain lucrative government contracts reserved for small and disadvantaged businesses.

19. Management members of SPI and CDS involved in the scheme were Dennis F. Campbell, SPI's former vice-president in charge of sales and marketing, Timothy G. Hubler, CDS's vice-president in charge of field operations, and Romeo P. Cruz, the former owner and President of Marikina.

20. The fraud included SPI and CDS personnel pretending to be Marikina

employees by using Marikina passwords, Marikina signature stamps, Marikina business cards, Marikina letterhead, and Marikina email addresses as well as using magnetic placards and decals bearing the Marikina logo to cover up SPI and CDS logo on SPI and CDS trucks.

## VIII. CAUSES OF ACTION

### Violations of The Federal False Claims Act

### Count I - Relator ex rel USA v SPI, Marikina and CDS

21. Title 31 of the United States Code, section 3729(a)[2] provides that any person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

. . . . . .

(7) knowingly makes, uses or causes to be made or used, a

---

[2] Congress recently passed the Fraud Enforcement and Recovery Act of 2009 ("FERA"), which was signed into law on May 20, 2009. Pub. L. 111-21 (S. 386.) Section 4 of FERA is entitled "Clarifications to the False Claims Act to Reflect the Original Intent of the Law," and amends various parts of the federal FCA, including the provisions at issue in this case. To the extent that FERA applies to this matter, reference is hereby made to the amended federal FCA.

> false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

. . . . . . .

is liable to the United States Government for a civil penalty of not less than $5,500.00 and not more than $11,000.00, plus 3 times the amount of damages which the Government sustains because of the act of that person.

22. Based on the allegations set forth herein, SPI and CDS caused Marikina to violate and has violated the False Claims Act, 31 U.S.C. §§ 3729(a)(1) in that they knowingly presented and caused to be presented to the United States Government a false or fraudulent claim for payment or approval.

23. Based on the allegations set forth herein, Corporate Defendants have submitted on its own and has caused Marikina to violate and has violated the False Claims Act, 31 U.S.C. §§ 3729(a)(2) in that Corporate Defendants have and has also knowingly made and used or and caused to be used a false record or statement to get a false or fraudulent claim paid or approved by the Government.

24. Based on the allegations set forth herein, Corporate Defendants have violated the False Claims Act, 31 U.S.C. §§ 3729(a)(3) in that they have conspired to defraud the Government by getting a false or fraudulent claim allowed or paid;

**WHEREFORE**, Relator respectfully requests this Court to enter judgment against Corporate Defendants, as follows:

(a) That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims and fraud alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

(b) That civil penalties be imposed for each and every false claim that defendant presented to the U.S. and/or its grantees;

(c) That post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the relator necessarily incurred in bringing and pressing this case;

(d) That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

(e) That the Relator be awarded the maximum amount allowed to them pursuant the False Claims Act;

(f) That any funds received by the United States or any Agencies thereof, in whatever form, be treated as an alternate remedy to which Relator is entitled to his statutory share of under the False Claims Act.

### Count II - Relator ex rel USA v Nagel and Fink

25. The FCA expressly imposes liability on individuals who knowingly cause someone else to submit a false claim for payment. 31 U.S.C. § 3729(a)(1). In interpreting the statute, courts have imposed FCA liability on defendants who caused others to submit false claims for payment, even if the party submitting the claim was unaware of its falsity. *See, e.g., United States v. Bornstein*, 423 U.S. 303 (1976) (imposing liability on subcontractor whose faulty electron tubes were incorporated into radio kits sold to United States); *United States v. Rivera*, 55 F.3d 703, 707 (1st Cir. 1995) (imposing liability on defendant who knowingly caused third party to unwittingly submit false claims).

26. Based on the allegations set forth herein, it is reasonably foreseeable that the Nagle and Fink ("Individual Defendants") were aware and directed the fraudulent conduct given their respective responsibilities and authority as described in the Complaint. *See, e.g., United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 243 (3d. Cir. 2004) (knowingly assisting in causing the government to pay claims grounded in fraud actionable under FCA).

27.  Based on the allegations set forth herein, Individual Defendants have s caused Marikina to violate and has violated the False Claims Act, 31 U.S.C. §§ 3729(a)(2) in that Individual Defendants have and has also knowingly caused to be used a false record or statement to get a false or fraudulent claim paid or approved by the Government;

28.  Based on the allegations set forth herein, Individual Defendants have violated the False Claims Act, 31 U.S.C. §§ 3729(a)(3) in that they have conspired to defraud the Government by getting a false or fraudulent claim allowed or paid;

**WHEREFORE**, Relator respectfully requests this Court to enter judgment against Individual Defendants, as follows:

(a)  That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims and fraud alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

(b)  That civil penalties be imposed for each and every false claim that defendant presented to the U.S. and/or its grantees;

(c)  That post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the relator necessarily incurred in bringing and pressing this case;

(d)  That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

(e)  That the Relator be awarded the maximum amount allowed to them pursuant the False Claims Act;

(f)  That any funds received by the United States or any Agencies thereof, in ~~whatever form, be treated as an alternate remedy to which Relator is entitled to his~~ statutory share of under the False Claims Act.

## IX. DAMAGES

29. The measure of damages the United States is entitled to recover under the FCA is the amount of money the government paid out by reason of the false claims over and above what it would have paid out if the claims had not been false or fraudulent. *Marcus,* 317 U.S. at 543-545, 63 S.Ct. 379; *United States v. Neifert-White,* 390 U.S. at 232, 88 S.Ct. 959. The government is allowed to recover three times the amount of its damages. 31 U.S.C. § 3729(a). "FCA damages 'typically are liberally calculated to ensure that they afford the government complete indemnity for the injuries done it.' " *United States ex rel. Roby v. Boeing Co.,* 302 F.3d 637, 646 (6th Cir.2002) (quoting *United States ex rel. Compton v. Midwest Specialties, Inc.,* 142 F.3d 296, 304 (6th Cir.1998)).

30. The computation of damages does not have to be done with mathematical precision but, rather, may be based upon a reasonable estimate of the loss. The government is entitled to recover a civil penalty for each false claim. Each knowing submission of a false or fraudulent claim is a separate violation of the False Claims Act. 31 U.S.C. § 3729(a)(2). Thus, the number of violations of the False Claims Act depends on the number of false or fraudulent claims or other requests for payments that defendant caused to be submitted. A penalty is assessed per false claim. *See United States v. Bornstein,* 423 U.S. 303, 313, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976); *United States v. Killough,* 848 F.2d 1523, 1533 (11th Cir.1988) (holding that each separate fraudulent submission by a defendant demanding payment by the government is a "claim" within the meaning of the FCA).

31. The penalty is mandatory. See United States v. Hughes, 585 F.2d 284, 286 (7th Cir.1978); *Killough,* 848 F.2d at 1533-34. As the legislative history to the 1986 Amendments to the FCA explains:

> The imposition of this forfeiture is automatic and mandatory for each claim

which is found to be false. The United States is entitled to recover such forfeiture solely upon proof that false claims were made, without proof of any damages . . . A forfeiture may be recovered from one who submits a false claim even though no payments were made on the claim. S.Rep. No. 345, 99th Cong., 2d Sess. at 8 (July 28, 1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273 (internal citation omitted).

32. The United States does not need to prove actual damages in order to recover these statutory penalties. The United States may recover penalties upon a showing that the claims were false, even if no damage is proved. *Varljen v. Cleveland Gear Co., Inc.,* 250 F.3d 426, 429 (6th Cir.2001) ("recovery under the FCA is not dependent upon the Government's sustaining monetary damages"); *see also United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1421 (9th Cir.1991) ("No damages need be shown in order to recover the penalty") (citing *721 *Rex Trailer Co. v. United States,* 350 U.S. 148, 153 n. 5, 76 S.Ct. 219, 100 L.Ed. 149 (1956).

### JURY DEMAND

Relator requests a trial by jury of all issues so triable.

DATED: January 19, 2012

**Begelman, Orlow & Melletz**

By: _____
Ross Begelman, Esquire

**Begelman, Orlow & Melletz
411 Route 70 East, Suite 245
Cherry Hill, New Jersey, 08034
856-428-6020
ross.begelman@begelmanorlow.com**