## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>**ex rel. ROBERT GREEN,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 1:10-cv-0040** |
| | : | |
| **v.** | : | |
| | : | |
| **SCHUYKILL PRODUCTS, INC.;** | : | |
| **JOSEPH W. NAGLE;** | : | |
| **ERNEST G. FINK, JR.; CDS** | : | |
| **ENGINEERS; MARIKINA** | : | |
| **CONSTRUCTION COMPANY** | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendants** | : | |

## M E M O R A N D U M

Relator-Plaintiff brought this qui tam action against Defendants, his former employers, pursuant to the provisions of the False Claims Act, 31 U.S.C. §§ 3729 - 3733. The United States convicted the two individual defendants on the basis of the same fraudulent conduct alleged in this action. Presently before the court is Plaintiff's motion for summary judgment. (Doc. 33.) At issue is whether Relator-Plaintiff is entitled to judgment as a matter of law against the sole remaining defendant in this civil action. For the following reasons, the court finds that there is no genuine dispute as to any material fact and concludes that Relator-Plaintiff is entitled to judgment as a matter of law as to liability. Accordingly, Relator-Plaintiff's motion for summary judgment will be granted.

## I.        Background

The facts submitted in support of the instant motion for summary judgment are entirely undisputed and are based largely on the remaining defendant's

failure to respond to Relator-Plaintiff's requests for admissions.[1]  (*See* Docs. 38 &
39.)  Those operative facts are summarized as follows.

### A.   Facts

Relator-Plaintiff was the original source of information that led to the
investigation into and prosecution of Defendant Ernest G. Fink ("Defendant Fink")
and the other co-conspirators.  At the trial of Defendant Fink's criminal co-
defendant, Joseph W. Nagle ("Nagle"), Agent Thomas Marakovits testified that
Relator-Plaintiff contacted the FBI to report, what Relator-Plaintiff characterized as,
DBE fraud.  *See United States v. Nagle*, Crim. No. 1:09-cr-0384-01, 2013 WL
3894841, *7 (M.D. Pa. Jul. 26, 2013).  Relator-Plaintiff provided information as a
confidential informant and was compensated roughly $5,300.00 for his assistance in
Agent Marakovits's investigation, during which Relator-Plaintiff made numerous
recordings.  *See id*. at *59.

Relator-Plaintiff was an employee of Schuykill Products Inc. ("SPI"), a
company engaged in the business of manufacturing concrete products to be used on
highway construction projects.  (Doc. 33-7, ¶¶ 1, 14-17.)  CDS Engineers ("CDS")
was a wholly owned subsidiary that operated as the engineering and erection division

---

[1] Federal Rule of Civil Procedure 36 governs requests for admission.  Under that rule, a
party "may serve on any other party a written request to admit, for purposes of the pending action only,
the truth of any matters within the scope of Rule 26(b)(1)" that relate to "facts, the application of law to
fact, or opinions about either" and "the genuineness of any described documents."  Fed. R. Civ. P.
36(a)(1).  A matter is deemed admitted if the responding party fails to timely provide a written answer
or objection to the request for admission.  Fed. R. Civ. P. 36(a)(3); *see also* Fed. R. Civ. P. 36(b) ("A
matter admitted under this rule is conclusively established unless the court, on motion, permits the
admission to be withdrawn or amended.").  Relator-Plaintiff served requests for admissions upon
Defendant Fink on April 1, 2013.  (Doc. 33-2.)  Defendant Fink failed to respond and, accordingly, is
deemed to have admitted the contents of the requests.  (*See* Doc. 38, p. 2 of 2 (citing Fed. R. Civ. P.
36(a)(3).)  Due to Defendant Fink's failure to respond to the court's April 8, 2014 rule to show cause,
(Doc. 38), Relator-Plaintiff's statement of material facts was accepted as undisputed on May 5, 2014,
(Doc. 39).  Accordingly, the material facts as submitted by Relator-Plaintiff and relied on by the court in
its disposition of the instant motion are entirely undisputed.

of SPI. (*Id*. at ¶¶ 7, 22-23.) Marikina Construction Company ("Marikina") was PennDOT's largest recipient of DBE-designated funds (*id*. at ¶ 37) and was certified as a disadvantaged business enterprise that subcontracted for work from general contracts on numerous federally funded highway construction projects (*see id*. at ¶¶ 35, 38). Defendant Fink was a director, officer, and shareholder of both CDS and SPI and held the titles of Vice President and Chief Operating Officer of SPI. (*Id*. at ¶¶ 3-6, 8-13.) Nagle was the President and Chief Executive Officer of SPI. (*Id*. at ¶ 28.)

Between 1993 and 2008, Defendant Fink, along with other co-conspirators, used SPI, CDS, and Marikina to obtain approximately 336 federally funded subcontracts worth approximately $119.4 million, despite SPI being ineligible for the contracts as a non-DBE. (*See id*. at ¶ 36.) By way of explanation, general contractors that were awarded federally funded contracts subject to DBE requirements subcontracted with Marikina to furnish and install bridge beams. (*Id*. at ¶¶ 38-39.) Marikina frequently subcontracted with SPI to obtain the bridge beams (*see id*. at ¶ 40), and CDS erected the purchased beams pursuant to the Marikina-general contractor contracts (*see id*. at ¶ 42). Marikina, through CDS, performed the work pursuant to the subcontracts, whereby it commonly installed the beams purchased from SPI. Indeed, the subcontracts into which Marikina entered with the general contractors were found, negotiated, coordinated, performed, managed, and supervised by SPI and CDS personnel. (*Id*. at ¶ 42.) This relationship permitted the general contractor to obtain DBE credits for both the beams and erection. Marikina did not perform a commercially useful function. (*Id*. at ¶ 41.)

Profits for the work performed on the subcontracts flowed through Marikina to CDS and SPI, less a fixed fee that was paid to Marikina. (*Id*. at ¶¶ 43-

3

45.)  Through this scheme, federal funds, that were intended to go to legitimate disadvantaged business enterprises, flowed through Marikina to SPI, resulting in SPI obtaining government benefits to which it was not entitled.  As part of his plea agreement, Defendant Fink admitted to "conspir[ing] with the upper management of SPI, CDS[,] and Marikina to defraud the USDOT in its implementation, execution, and administration of its DBE program" for the purpose of "(1) unjustly enrich[ing] themselves by using Marikina as a front company to obtain for SPI and CDS the profits on the DBE subcontracts . . . that were slotted for legitimate DBE's; and (2) . . . increas[ing] SPI[' s] profits by marketing itself to [general contractors] as a 'one-stop shop' which could not only supply the beam, but also erect the beam and provide the [general contractor] with valuable DBE credits." *United States v. Fink*, Crim. No. 1:09-cr-384-02, Statement of Facts, Dkt. No. 77-2 (M.D. Pa. July 30, 2010).

    **B.**    **Procedural History**

        As stated, underlying this civil action is the criminal prosecution of the two natural persons named as defendants herein, *i.e.,* Defendant Fink and Nagle.  On November 19, 2009, Defendant Fink and Nagle were indicted by a federal grand jury sitting in the middle district of Pennsylvania of 32 counts related to their participation in the aforementioned fraudulent scheme to obtain federally funded highway construction contracts set aside for socially and economically disadvantaged business enterprises.  *See United States v. Nagle*, Crim. No. 1:09-cr-0384, Indictment, Dkt. No. 1 (M.D. Pa. Nov. 19, 2009).  On January 8, 2010, Relator-Plaintiff, Robert Green, on behalf of the United States, filed a False Claims Act ("FCA") lawsuit, under seal, against defendants Schuykill Products Inc., Nagle, Defendant Fink, CDS Engineers, and Marikina Construction Company.  (Doc. 1.)

The Department of Justice declined to intervene in the civil lawsuit on November 21, 2011.  (Doc. 17.)

On August 16, 2010, Defendant Fink pleaded guilty to Count 1 of the indictment, which charged him with engaging in a conspiracy to commit wire and mail fraud and to defraud the United States by impeding, impairing, obstructing, and defeating the lawful governmental functions of the United States Department of Transportation in the implementation, execution, and administration of its Disadvantaged Business Enterprises program.  *See Fink*, Crim. No. 1:09-cr-0384-02, Order Accepting Guilty Plea, Dkt. No. 87 (M.D. Pa. Aug. 16, 2010).  The agreement to which Defendant Fink pleaded contained a statement of facts that included acknowledgment that Defendant Fink and the other co-conspirators, all of whom were upper-level management for SPI and CDS, used Marikina as a passthrough and that Marikina did not perform a commercially useful function.  *See Fink*, Crim. No. 1:09-cr-0384-02, Statement of Facts, Dkt. No. 77-2 (M.D. Pa. July 30, 2010). Following a jury trial, Nagle was convicted on April 5, 2012.  *See Nagle*, Crim. No. 1:09-cr-0384-01, Jury Verdict, Dkt. No. 197 (M.D. Pa. Apr. 5, 2012).  The court determined the amount of loss attributable to Defendant Fink's and Nagle's conduct to be $135.8 million and $53.9 million respectively.  *See Fink*, Crim. No. 1:09-cr-0384-02, Opinion, Dkt. No. 282 (M.D. Pa. May 16, 2014); *Nagle*, Crim. No. 1:09-cr-0384-01, Opinion, Dkt. No. 281 (M.D. Pa. May 7, 2014).  Defendant Fink and Nagle are awaiting sentencing, which is scheduled for July 14, 2014, and June 30, 2014, respectively.  *See Fink*, Crim. No. 1:09-cr-0384-02, Notice of Hearing, Dkt. No. 283 (M.D. Pa. May 20, 2014); *Nagle*, Crim. No. 1:09-cr-0384-01, Notice of Hearing, Dkt. No. 284 (M.D. Pa. May 20, 2014).

Relator-Plaintiff filed an amended complaint on January 26, 2012, (Doc. 18), which was served upon Defendant Fink, Nagle, SPI, and CDS on or about March 8, 2012 (Doc. 22).[2]  Nagle, SPI, and CDS never responded to the complaint, and default judgment was entered against them on June 5, 2012.  (Doc. 30.) Defendant Fink filed his answer to the amended complaint on June 18, 2012.  (Doc. 31.)

On April 1, 2013, Relator-Plaintiff served Defendant Fink with requests for admission.  (Doc. 33-2.)  Due to Defendant Fink's failure to respond within thirty days, Relator-Plaintiff sent a letter on May 9, 2013, advising Defendant Fink that the requests for admission were deemed admitted pursuant to Federal Rule of Civil Procedure 36.  (Doc. 33-3.)  On July 18, 2013, Relator-Plaintiff filed the instant motion for summary judgment, statement of material facts, and brief in support. (Doc. 33.)  On August 8, 2013, the parties stipulated to extend the deadline by which Defendant Fink was to respond to the pending motion until September 3, 2013. (Doc. 35.)  On February 4, 2014, this case was reassigned to the undersigned judge. (Doc. 36.)  On April 8, 2014, the court, after noticing that Relator-Plaintiff's statement of material facts failed to cite to the record for support of the averments contained therein despite the statement corresponding nearly paragraph-by-paragraph to the requests for admission, issued a rule directing Defendant Fink to show cause why the noncompliance with Middle District of Pennsylvania Local Rule 56.1, *see* M.D. Pa. L.R. 56.1 (requiring statements of material facts in support of a motion for summary judgment to include reference to the parts of the record that support the statements), should not be excused.  (Doc. 38.)  Defendant Fink failed to respond to

_____

[2]  The summons was returned un-executed as to Marikina Construction Company.  (Doc. 23.)

the April 8, 2014 order, and, on May 5, 2014, the court made the rule absolute and accepted the statement of material facts as filed.  (Doc. 39.)  As of this date, Defendant Fink has still not responded to the motion.  Thus, the matter is ripe for consideration.

## II.        Legal Standard

Rule 56 of the Federal Rules of Civil Procedure directs the court to enter summary judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R Civ. P. 56(a).  Thus, summary judgment is appropriate when the material facts are undisputed and the only issue before the court is a pure question of law.

The initial burden of demonstrating the absence of a genuine issue of material fact falls on the moving party.  Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *U.S. ex rel. Thomas v. Siemens AG*, Civ. No. 09-cv-4414, 2014 WL 114709, *19 (E.D. Pa. Jan. 13, 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 587 (1986)).  The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which he bears the burden of production, because bare assertions, conclusory allegations or suspicions are insufficient to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Thus, summary judgment is appropriate when the record, taken as a whole and viewed in the light most favorable to the nonmovant, could not lead a rational trier of fact to find for the nonmoving party. *See Matsushita*, 475 U.S. at 587.

7

**III.**      **Discussion**

This case arises under the qui tam provisions of the False Claims Act, which provides that a private person "may bring a civil action for a violation of [S]ection 3729 . . . in the name of the Government." 31 U.S.C. § 3730(b). Relator-Plaintiff asserts claims under three provisions of the FCA[3]: Section 3729(a)(1)(A), knowingly presenting a false or fraudulent claim for payment or approval to the government; Section 3729(a)(1)(B), knowingly making a false record or statement to get a false or fraudulent claim paid or approved by the government; and Section 3729(a)(1)(C), conspiring to defraud the government by getting a false or fraudulent claim allowed or paid. 31 U.S.C. §§ 3729(a)(1)(A)-(C).

The purpose of the FCA is "to protect the funds and property of the Government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were made." *Rainwater v. United States*, 356 U.S. 590, 592 (1958). To establish a claim brought by a private person under the FCA, the relator must prove that the defendant made or submitted a materially false statement or claim to the government and the defendant knew the statement or claim was false or fraudulent. *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 109 (3d Cir. 2007). Thus, a claim pursuant to the FCA requires proof: (1) that the defendant "knowingly present[ed] or cause[d] to be presented [to an officer or employee of the United States Government], a false or fraudulent claim for payment or approval"; (2) that the claim was false or fraudulent; (3) that the defendant knew the claim was false and

---

[3] Relator-Plaintiff's amended complaint stated causes of action under 31 U.S.C. § 3729(a)(1)-(3). This section was reorganized and re-codified the provisions formerly found under subsections 3729(a)(1)-(3) to subsections 3729(a)(1)(A)-(C). As applicable to the matter *sub judice*, the reorganization did not materially change the substance of the Section.

8

fraudulent; and (4) that the United States suffered damages as a result of the false or fraudulent claim. *See* 31 U.S.C. § 3729(a). To constitute a claim under the FCA, the fraudulent statement or action must have the purpose and effect of causing the government to pay out money. 31 U.S.C. § 3729(b)(4); *accord Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 183 (3d Cir. 2001).

Liability under Section 3729(a)(1)(B) requires the defendant to have made or used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government. 31 U.S.C. § 3729(a)(1)(B); *accord Allison Engine Co. Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662, 668 (2008). Section 3729(a)(1)(B) does not demand proof that the defendant caused a false record or statement to be presented or submitted directly to the government; rather, the Section requires that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the government. Therefore, as the Supreme Court held, "a subcontractor violates [Section 3729(a)(1)(B)] if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim." *Allison Engine*, 553 U.S. at 671. Section 3729(a)(1)(C) makes liable any person who conspires to defraud the government by getting a false or fraudulent claim allowed or paid. *See* 31 U.S.C. § 3729(a)(1)(C). Under Section 3729(a)(1)(C), it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the government. Instead, it must be shown that the conspirators intended to defraud the government. There is no requirement in the conspiracy subsection of the FCA of proof that any false or fraudulent claim was actually submitted to the government; rather, like 18 U.S.C. § 371, the FCA

proscribes the conspiracy itself, regardless of whether it was ever effectuated. *See United States v. Kates*, 419 F. Supp. 846, 852 (E.D. Pa. 1976).

In his answer, Defendant Fink denied allegations that he knowingly presented a false claim for payment to the government. (Doc. 31.)  To establish knowledge under the FCA, a relator must prove that the defendant acted with actual knowledge, deliberate ignorance, or reckless disregard for the truth or falsity of information. 31 U.S.C. § 3729(b)(1)(A)(i)-(iii).  Although specific intent to defraud is not required, 31 U.S.C. § 3729(b)(1)(B), Congress has expressed "its intention that the [FCA] not punish honest mistakes or incorrect claims submitted through mere negligence." *Hefner*, 495 F.3d at 109.

Section 3731(e) of the FCA bars the relitigation of issues raised "in any criminal proceedings charging fraud or false statements, [which resulted in a final judgment in favor of the United States] whether upon a verdict after trial or upon a plea of guilty or nolo contendere." 31 U.S.C. § 3731(e).

With respect to Relator-Plaintiff's burden of proof that Defendant Fink submitted false claims for payment, Relator-Plaintiff argues that Defendant Fink was the Chief Operating Officer of SPI and an officer and director of CDS. (Doc. 33-7, ¶¶ 3-13.)  SPI entered into contracts with Marikina and was paid for its work by the government through Marikina's subcontracts with general contractors. (*Id*. at ¶¶ 14-20.)  Defendant Fink and other SPI and CDS upper level management were aware that payments received on these DBE subcontracts were from federal funds. (*Id*. at ¶ 21.)

In his guilty plea, Defendant Fink admitted that he obtained federal funds by using Marikina, a company that did not perform a commercially useful function despite being certified as a DBE, as a passthrough that would be listed as a

subcontractor when the work was actually being done by SPI and CDS employees. (*Id*. at ¶ 35.)  The undisputed facts prove that Defendant Fink knowingly caused the submission of fraudulent claims for payment to an entity under contract with the government, that the claims were false, that the submissions caused the government to approve those claims, and that the claims were paid.  Thus, Relator-Plaintiff has sustained his burden to show his entitlement to judgment as a matter of law on Counts I and II.

With regard to Count III, Defendant Fink pleaded guilty to conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  The change of plea proceedings included Defendant Fink's admission that he was:

> [I]nvolved in a conspiracy to defraud the United States by impeding, impairing, obstructing[,] and defeating the lawful governmental function of the United States Department of Transportation in the implementation and execution and administration of its DBE program; and that [he] committed wire and mail fraud in the process of executing that scheme.

(Doc. 33-5, p. 11 of 14.)

The undisputed evidence of record establishes that Defendant Fink had an agreement with several co-conspirators to use Marikina as a pass-through DBE for the purpose of fraudulently obtaining federally funded subcontracts that SPI was otherwise ineligible to receive.  The statement of material facts to which Defendant Fink pleaded guilty clearly established the existence of and Defendant Fink's participation in the criminal conspiracy to defraud the government.  Moreover, since both the criminal and these civil proceedings involve the same conspiracy, Defendant Fink's guilty plea conclusively establishes all of the factual issues as to his liability under the FCA counts set forth in the amended complaint.  *See* 31 U.S.C. § 3731(e).

Thus, Relator-Plaintiff has sustained his burden to show his entitlement to judgment as a matter of law on Count III.

**IV.**          **Conclusion**

Based on the foregoing, the court concludes that the undisputed statement of material facts conclusively establishes that Defendant Fink engaged in a conspiracy to defraud the government and that Defendant Fink knowingly caused the submission of fraudulent claims for payment to an entity under contract with the government and that the claims were paid.  Accordingly, Relator-Plaintiff is entitled to judgment as a matter of law as to the issue of liability on Counts I, II, and III of the amended complaint.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  May 22, 2014.

12